Good morning, Your Honors. May it please the Court, Jerome Matthews for Mr. Perez. It is our position that Mr. Perez was denied due process in the manner in which this case was prosecuted and denied fair sentencing procedures due to errors committed by Judge White in the District Court. At the outset, I want to make clear that I'm not asking this Court to revisit double jeopardy and overrule the dual sovereignty doctrine, but it's precisely because the dual sovereignty doctrine persists that we argue that Mr. Perez was denied due process. What I'm asking this Court to do is to extend the holding originally announced by the Supreme Court in Padilla v. Kentucky to this particular type of case and state that the government has a duty to warn if it is involved in a state prosecution to warn the defendant that federal charges are being considered. This is why. First, we begin with the Padilla's holding. They recognized, the Supreme Court recognized, that there were certain consequences that were so severe or so important that the defendant had to be advised of those consequences before the plea was entered. And in the Padilla case, although it rested on the Sixth Amendment, I think it was logically placed there because in those cases, the defense counsel for the defendant has before him or her an array of treatises and, in fact, a statute that can be consulted to determine precisely what would happen if certain types of offenses were committed. In fact, I believe it's under Title 8 U.S.C. 1101A43 that lists a number of offenses that would lead to aggravated felonies and result in deportation. No such reference exists in a particular case like this because whether to prosecute somebody that's already been convicted in a state court is entirely discretionary. And no defense counsel has access to a federal prosecutor discretion. Who was supposed to tell him in the state system that he might be prosecuted by the feds? Well, what I'm saying here is that the federal government is involved. Typically, in this case, a federal agent was involved, an FBI agent, Sondra Sanchez, I believe, was applied to this joint county federal investigation. So the federal agent was supposed to tell him? I didn't say federal agent, Judge Paillas. I'm somebody else. Well, I'm asking you, who was supposed to tell him? The state court judge? No. You might be prosecuted in the federal court if you enter a plea here? No. I think that's what I'm going to do. The public defender in state court, you might be prosecuted if you enter a plea here? No. The state prosecutor? Who's supposed to tell him? I think that duty devolves on someone, either the agent or someone above the agent, whoever's supervising that case. And typically, it would be a U.S. attorney. Because a U.S. attorney in a state court proceeding got over there and said, hey, you enter a plea here, you might be prosecuted in the federal court. There is so much overlap between federal and state prosecutions at this point, Judge Paillas. It is not an onerous task at all. A simple phone call to defense counsel or even to the DA. Let this guy know we're considering federal charges. And that is done on a fairly consistent basis. The government has not argued against the evidence we've put forth before Judge White. In fact, all the district judges in this circuit know quite well that there's a lot of federal overlap. There are federal agents that are cross-designated. So we don't think this is an onerous duty at all. Has any court extended the Padilla case to matters like this? Not to federal state prosecutions, Judge Siler. Not that I'm aware of. I would note that Judge Reinhart, the late Judge Reinhart, in the Rodriguez-Vega case a few years ago, looked at a similar situation, again, in the kind of Padilla context, but noted that the warning in a plea agreement that may, you know, a defendant may face deportation was not enough. And because it was an absolute certainty. You know that we didn't even extend Padilla to place any duty on the district court to provide that information to a defendant in taking a plea. So it's hard to think that there's any general rule outside of ineffective assistance of counsel that could be discerned from Padilla. Well, again, Judge Ikuda, I think the distinguishing fact with Padilla, and again, it's a Sixth Amendment case, is because the defense counsel has the ability to divine whether or not this kind of consequence would follow. But we had the opportunity in Delgado-Ramos, we considered whether the court, as part of the plea colloquy, should advise the defendant of the potential collateral consequences, which would be outside of the ineffective assistance of counsel situation, and we confined Padilla to the Sixth Amendment situation and said the court had no such duty. Correct. So we rejected the argument that Padilla could be extended beyond the defense counsel in Delgado-Ramos. Right. But Padilla itself eschewed the distinction between collateral and direct consequences. And again, they were focusing on consequences that were so severe that the duty arose. And I'm suggesting to you at this point that the inability to basically try a case to which the defendant has already pleaded guilty is far more severe than deportation, which is an administrative remedy. Why don't you shift focus a bit and address the crime of violence issue? Okay. I want to turn to 243D. And I do, I'm sorry, I want to reserve a few minutes for rebuttal. With respect to 243D, Your Honor, it's our position that the district court got off track initially when it felt that there was an inter-circuit split. I did not believe that Marina Tobar and Takapu, I think is how you pronounce it, are necessarily constituted a circuit split because Takapu was decided two years before the Supreme Court issued its decision in Johnson 1, you know, articulating what type of violent force was necessary to satisfy the force clause of 4B1.2. But those cases are both unpublished, right? So, so they're, they're not, they have no precedential value. Marina Tobar is an unpublished case, that is correct, Your Honor. Yeah, both of them are. Right. But in any event, I do believe that Marina Tobar is the only case the circuit has ever addressed 243D in particular. And it held under the circumstances that because the touchstone for the analysis for the force clause is a minimum level of force for a conviction that 243 did not satisfy that. The issue that we have here, Your Honor, is that the district courts are looking to Colon and they are suggesting to you that those cases incorrectly focus on the results of the assault or the results of the battery rather than the actual force used. Johnson directs all courts to focus on the … But those cases are actually published cases, right? They are. These are published cases. So, so we do have to consider whether they're, they're binding effect on us. I, I do, Your Honor, but again, there's … And so, especially, for example, Colon Areola did say that when the battery is required, has an extra element that isn't in 242, that can indicate it's a crime of violence. So why wouldn't we apply that to 243D? The problem, Your Honor, is that Colon Areola focuses on the result, irrespective of the fact that it has an extra element, because Johnson says you focus on the force itself. You focus on the conduct. And you also focus on how state courts have interpreted the statute at issue. And I cited to Judge White, and we have cited in our briefs a number of cases, Hopkins, Mansfield, Pretolo, which the California courts have stated explicitly that none of those cases, that, that 243D does not contain the type of force necessary to constitute violent force. The least touching … Okay. So you didn't cite any case where they … So in Hopkins and Mansfield, in a different context, the court gave a theoretical, a hypothetical. Did you find any cases where someone was touched, there was the offensive touching resulting in a serious injury, and they were actually prosecuted under 243D? I did not find such cases, Judge Ikuda. However, and that's one of the things the government seizes on, I would suggest to you that the reason that that reasoning is not persuasive is because a court articulating what would meet the felony battery standard, and that's precisely what Pretolo does, and it's cited in excerpts of Record Page 147. Pretolo says that the, there's a difference in California battery and California assault. Battery does not necessarily comprehend assault, and a, a 243 crime focuses on the results rather than the actual conduct. That is in contradistinction to precisely what Johnson compels, which is that you focus on the conduct itself. Further, with respect to the state cases, that's the one thing that I believe Judge Donato in the Reddick case, which is a case that was fairly recently decided that did find that 243D was not a crime of violence, focused upon was the fact that the, the California courts use this least offensive touching analysis, which is inconsistent with Moncrief and the Supreme Court cases, but also suggests that the focus should be on the least conduct necessary to satisfy a violation of the statute. I see I'm down to five minutes. I'd like to discuss about two more minutes worth of my argument here. The final argument that, that we're making is that the district court did not consider fully or at all the disparate impact of successful prosecutions on the data that I was able to garner from my colleagues around the country. We came up with three or four cases in which successful prosecution was had by the federal government after the client had bled out or been tried in the state courts, and in every instance it was a person of color, and I raise that issue in the sentencing memorandum because as I told Judge White, I didn't think we could meet the threshold standard for selective prosecution because of the barriers that are involved in not using raw data and raw statistics, and that's this Court's precedent as well as the Supreme Court's precedent. The district court held that the argument was not properly before it, and that's a direct quote, not properly before the court at this time, the court will find that at excerpts of record page 37. Because we could not get the discovery because of precedent such as Bass, which said that you have to do more than a bare statistical threshold showing in order to get discovery in the first place. We made the argument at sentencing, and we felt that because 3553A comprehends the disparate impacts upon similarly situated defendants, that that's something the court should have considered. Because the court did not consider that, we suggest that that's error and that a remand is necessary on that issue as well. I'm down to about three minutes and 30 seconds I'd like to reserve. Okay, that's fine. Thank you. Good morning. May it please the Court. Susan Gray on behalf of the United States. I'd like to begin addressing the first two issues. Both are controlled by binding precedent. The defendant has conceded that he has no basis for asking this Court to overturn almost a century of binding Supreme Court precedent on the dual-sovereignty doctrine to the extent that he is now suggesting that he has a right to notice whenever the government is, quote, involved in a State prosecution. He cites no basis, no authority whatsoever for that right. And in essence, Your Honor, he is asking this Court to create a right, a due process right at a whole cloth. But he's asserting a due process right for a right he doesn't have, which is, one, a right to a global resolution, a right to determine where he's going to be prosecuted first, a right to be informed of a potential indictment, or even to rush the government into the Federal government into making a decision. I'm not a prosecutor or anything, and I really don't know how these decisions are made. But this did strike me as a little bit odd that he was prosecuted for possession of a weapon in State court, and then he was prosecuted for essentially the same thing in Federal court. That's correct, Your Honor. And I was surprised that there was a compelling Federal interest to pursue it separately. Well, this Court has a- I understand. I understand. I understand. I'm just curious. I was reading this. It's like, what was the compelling Federal interest? Well, Your Honor- I know you make those decisions. Yes, Your Honor. That's in your bailiwick. And that discretion is the government's. But on the other hand, Your Honor, this Court has explicitly recognized, and I apologize if I can't remember if it's Zone or Lucas, that it is entirely appropriate, the government having viewed, if it believes that in a particular instance, believes that the defendant has not the sentence imposed is not sufficient to address the defendant's dangerous and recidivist conduct, as in this case, that another prosecution is appropriate. And that this Court, under this Court's binding precedent, that there is no problem with that. If the Court doesn't have any further questions about the dual sovereign doctrine, I'd like to go to the second issue. Maybe they'll raise it again with the Supreme Court. Pardon me? Maybe they'll raise the doctrine again with the Supreme Court. It — they may indeed, Your Honor, until that point. And then this Court is bound by that precedent. As to the second issue, the district court did not err in finding that 243d is a categorical crime of violence. And the district court properly followed this Court's reasoning in Colon-Ariola. That — this Court's inquiry is equally governed by the binding precedent of Colon-Ariola. The outcome that defendants seeks of finding that 243d is not a crime of violence would directly conflict with this Court's binding reasoning in Colon-Ariola, that 243c is a crime of violence. In short, he's asking this Court to overturn Colon-Ariola, something this Court can only do en banc. Colon-Ariola controls in this instance, as the district court relied on it, because there's no daylight between the two statutes. The distinction between C and D is that it is — there is no distinction. Force that inflicts serious bodily injury, as required by D, as — as with force that causes an injury requiring professional medical treatment under 243c, is of necessity, as the Colon-Ariola Court found, force that is capable of causing physical injury as required by Johnson. Now, Colon-Ariola, he is, in essence, asking this Court to conduct a — the Johnson analysis anew on 243d. The Court doesn't need to do that. The Colon-Ariola Court has already performed the Johnson analysis. Colon-Ariola came down four years after Johnson. Those — Johnson, as well as Ortega-Mendez, and also other State cases, were cited to the Colon-Ariola Court, specifically in Defendant's reply brief before the Court. And the Court in Colon-Ariola was — took pains to distinguish the earlier case, the only earlier published case, on whether or not there was a — it was a crime of violence. And it specifically distinguished it because, in this instance, 243c, as does 243d, requires force necessary to inflict serious bodily injury. Therefore, we — the government believes that this case — the Court need not go any further. This Court has already held that 240 — that force sufficient to inflict injury requiring professional medical attention is necessarily force capable of causing physically pain and injury as required under Johnson. Similarly, 243d requires force sufficient to inflict serious bodily harm on another. And that fits squarely within the Johnson definition of a crime of violence, force capable of causing physical pain and injury. If the Court has no further questions on the — I actually don't read the transcript. That way, you're on. But not this district court. I'm saying the district courts in general. Well, I think that the 28J letter that I submitted last week to the Court indicated that the district court in San Diego in — in, I believe it's Lopez-Hernandez went through the different district courts and the — came out with different conclusions. But I would say that the Reddick case that the defendant cited relied on Ortega-Mendez, which Colon-Ariola specifically distinguished. And it distinguished it because, as the Court said, it's plainly — it's Ortega-Mendez because 243c, as does 243d, requires proof of an element that 242 does not. So to the extent that the Reddick court that he cited relied on Ortega-Mendez, this Court has already found that that's inapplicable. And it's also found specifically that when there — the 243c, and in this case d, requires physical force sufficient to inflict injury, it is necessarily a crime of violence. So the Court may wish to clarify that, but we do believe that Colon-Ariola is the — is binding authority on this Court, and any other determination would be — conflict directly with that binding authority. As to the last issue, the district court clearly considered his unsubstantiated argument of discriminatory — of — of selective prosecution. As he concedes, he cannot make out — he couldn't bring a — didn't meet the standard for a — such a claim. And all he offered the Court was anecdotal evidence. And as I cited to the Court in — I believe it's on ER-33 and — or ER-37, the Court said he considered it. He even turned to the AUSA who — and — and said, you know, asked some questions about it. He'd also seen it in the — in the defendant's sentencing memorandum, the government's papers, and he considered it, but said, I'm not going to — this is not properly before me unless you have some actual evidence. And I think that was the Court's term, actual evidence. So this Court's — under this Court's precedent, the Court is not required to take off every single one of the 3553a factors that it considers. This Court presumes that it understands the law regarding its obligations at sentencing, and that based upon — even if it doesn't tick it off specifically, there — it is not required to make a rote determination as to each factor, or each factor it considers. It also — and here, the record, given the party's sentencing papers and the transcript of the hearing, indicates it clearly considered them. Moreover, I would just point out that the Court actually took into account the defendant's prior two months in State custody and — and reduced the defendant's sentence by that period of time so that he wasn't — he did not suffer — he wasn't doubly punished for this particular offense. If the Court has no further questions, I'd ask the Court to — Roberts. Any questions? I would ask the Court to affirm the conviction and also affirm the sentence in part. Okay. Thank you, counsel. I want to first respond to the government's statement that Mr. Perez is asserting a constitutional right to a global resolution. We're not saying this is a constitutional right, Your Honors. What I'm suggesting is that before a State defendant makes an informed decision or to allow a State defendant to make an informed decision, whether it entered the plea, it would be nice to be informed that the Federal Government was involved so that the defense lawyer would have an opportunity to contact the Federal prosecutor and find out whether a global resolution could be had or if there was some Federal interest that could be addressed by a State sentence so that the specter of dual prosecution could be avoided. I'm not saying that there is a constitutional right to a global resolution. With respect to an issue that Judge Acuda raised during my initial opening argument, I did want to refer you back to the Duenas-Alvarez case, because I think that's what you're — you were asking about, whether there was a specific case where a minimum amount of force resulted in serious bodily injury, and the California appellate court held that that was sufficient to satisfy the statute. The reason that Duenas-Alvarez was decided the way it was is because the Supreme Court noted that the — in the case before it, counsel had not actually even cited any cases in which the force necessary to exceed the generic definition of something was even established or discussed. In this particular case, you have two or three cases from California courts in which it precisely is discussed, and I would refer the Court back to the Bertoldo case, where the California Court of Appeal noted that the least amount of force necessary to constitute battery was sufficient. And I can certainly conjure up any number of cases in which, let's say, somebody gets pushed down the stairs during an argument. No violent force is inflicted, but if the stairs are cement, it's very easy to see how somebody could fall down those stairs and fracture an arm, possibly get a concussion, you know, this is reality. And when California courts state that that is sufficient to constitute a violation of the statute, I think this Court has before it a sufficient amount of case law to look at and make that determination. With respect to Colón-Areola, again, it's up to this Court how to approach it. There is no published precedent that I'm aware of where this circuit has dealt with Section 243d of the California Penal Code. Irrespective of the fact that 243c may have the same basic conduct alleged, I believe this Court is riding on a clean slate. If the Court chooses at some point to revisit it, you know, it's up to this Court how it determines whether or not the Colón-Areola has any impact on 243d at all, and if it does, what to do about it. I think this Court has got the absolute power to decide 243d on its own merits. With respect to the 3553a factor, Your Honor, when I brought this issue up, I ID'd a specific factor under 3553a, which is disparate impact. So while it is true that the district court need not engage in a road analysis of its 3553 reasoning, when an issue of this import is specifically identified and raised and brought to the Court's attention, I do feel the Court is obligated to, at the very least, acknowledge it and make some type of written decision about it. Not written decision, I'm sorry, but some type of statement about it in terms of its reasoning so that the record is probably before this Court for review. Okay. Over your time. Thank you very much. Thank you, Counsel. We appreciate the arguments on both sides and cases submitted at this time. Thank you.
judges: Siler, Paez, Ikuta